ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| EL PUEBLO DE PUERTO RICO<br><br>Apelado<br><br>v.<br><br>ERIC CONDE SEDA VILA<br><br>Apelante | KLAN202200659 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm.: ISCR202000162<br><br>Sobre: Art. 127 Código Penal 2012 |
|---|---|---|

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Jueza Rivera Marchand y la Jueza Martínez Cordero[1].

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de noviembre de 2023.

Comparece el señor Eric Conde Seda Vila (en adelante, apelante o señor Seda Vila), mediante un recurso de *Apelación Criminal* presentado el 18 de agosto de 2022. En este, nos solicita la revocación de la *Sentencia* dictada el 19 de julio de 2022 por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (en adelante, TPI) en la cual, luego de la celebración de un juicio por jurado, el apelante fue encontrado culpable de forma unánime por un jurado por violación al Artículo 127-A del Código Penal de Puerto Rico.[2] En consecuencia, se le sentenció a diez (10) años de cárcel bajo el régimen de libertad a prueba.

Por los fundamentos que expondremos a continuación, se *confirma* la sentencia apelada.

---

[1] Véase, Orden Administrativa OATA-2023-001 del 9 de enero de 2023 en la que se asigna el presente recurso a la Hon. Beatriz M. Martínez Cordero en sustitución de la Hon. Ivelisse Domínguez Irizarry.
[2] 33 LPRA sec. 5186a.

I.

Conforme surge de los autos originales, por hechos acaecidos el 2 de octubre de 2019, el Ministerio Público presentó dos acusaciones contra el señor Seda Vila por: (i) infracción al Artículo 5.05 de la Ley 404-2000[3] sobre portación y uso de armas blancas y, (ii) por infracción al Artículo 127-A del Código Penal de Puerto Rico[4] sobre maltrato a personas de edad avanzada.

Luego de varios incidentes procesales, los cuales son innecesarios pormenorizar, se celebró el juicio en su fondo durante los días 24 y 25 de febrero de 2022 y los días 11 y 12 de abril de 2022. Cabe precisar que dicho juicio fue uno por jurado. Así pues, el Ministerio Público presentó los siguientes testigos: (i) agente José Rodríguez Franco;[5] (ii) señora María Ortiz González;[6] (iii) señor Vicente Cruz Padilla,[7] y (iv) señora Santa Pérez Martel.[8]

Por su parte, la defensa del señor Seda Vila sentó a testificar a la señora María Isabel Vélez Nieves[9] y al propio acusado, señor Eric Conde Seda Vila.[10] Por su pertinencia, a continuación, se resumen los testimonios presentados por los testigos previamente mencionados:

Agente José Rodríguez Franco

El agente José Rodríguez Franco (en adelante, agente Rodríguez Franco) testificó con relación a la investigación que realizó sobre el incidente que motiva este caso. En ese sentido, atestiguó que, el 2 de octubre de 2019, atendió al apelante en el Cuartel de Mayagüez, ya que este se personó para realizar una querella por el delito de agresión.[11] Narró que el apelante le explicó que vio al señor

---

[3] Ley Núm. 4-2000, Ley de Armas de Puerto Rico, 25 LPRA sec. 458d.
[4] 33 LPRA sec. 5186a.
[5] Transcripción de la Prueba Oral, 24 de febrero de 2022, a las págs. 12-93.
[6] *Id.*, a las págs. 94-142.
[7] Transcripción de la Prueba Oral, 25 de febrero de 2022, a las págs. 9-99.
[8] Transcripción de la Prueba Oral, 11 de abril de 2022, a las págs. 23-72.
[9] *Id.*, a las págs. 76-137.
[10] *Id.*, a las págs. 144-213.
[11] Transcripción de la Prueba Oral, 24 de febrero de 2022, a la pág. 16, líneas 3-24.

Vicente Cruz Padilla (en adelante, señor Cruz Padilla) quemando unas hojas cerca de un árbol de mangó frente a la residencia de este último.[12] Le indicó que, en ese momento, el apelante tomó un rastrillo para dispersar las hojas que el señor Cruz Padilla estaba quemando y este último, el señor Cruz Padilla, agarró ese mismo rastrillo y comenzó a agredirlo en el brazo izquierdo, en la cabeza y en el pecho.[13] Sin embargo, el agente testificó que no percibió alguna lesión seria en el cuerpo del apelante.[14]

El agente Rodríguez Franco continuó su testimonio esbozando que al día siguiente, entiéndase, el 3 de octubre de 2019, se presentó a la residencia del señor Cruz Padilla y cuando lo vio, percibió que este tenía un moretón y el ojo izquierdo hinchado.[15] Entonces, el señor Cruz Padilla le narró que mientras quemaba unas hojas sintió que un vehículo iba a gran velocidad cerca de él, se detuvo y de ahí se bajó el apelante, quien "venía hacia encima de él".[16] El señor Cruz Padilla le explicó al agente, que temió por su seguridad y utilizó su rastrillo para despegarse del señor Seda Vila.[17] Acto seguido, se suscitó una discusión entre el señor Cruz Padilla y el apelante. Entonces, este último buscó un rastrillo industrial en su vehículo y con este, agredió al señor Cruz Padilla en el costado izquierdo, la cabeza y el ojo hasta que cayó inconsciente.[18]

El agente Rodríguez Franco también relató que, el 4 de octubre de 2019, entrevistó a la señora Santa Pérez Martel (en adelante, la señora Pérez Martel), quien salió de su residencia y vio al apelante discutiendo con el señor Cruz Padilla.[19] Asimismo, la señora Pérez Martel le comentó que ella percibió el momento en el

---

[12] *Id.*, a la pág. 17, líneas 1-21.
[13] *Id.*, a la pág. 17, líneas 22-25; pág. 18, líneas 1-9.
[14] *Id.*, a la pág. 18, líneas 10-22.
[15] *Id.*, a la pág. 19, líneas 1-12.
[16] *Id.*, a la pág. 19, líneas 13-21.
[17] *Id.*, a la pág. 19, líneas 22-25; pág. 20, líneas 1 y 2.
[18] *Id.*, a la pág. 20, líneas 3-14.
[19] *Id.*, a la pág. 39, líneas 6-25; pág. 40, líneas 1-3.

que el apelante iba "para encima" del señor Cruz Padilla y ante esto, el señor Cruz Padilla le dio un golpe al apelante.[20] Narró que inmediatamente, el señor Seda Vila agarró un rastrillo industrial y golpeó al señor Cruz Padilla en diferentes partes del cuerpo hasta dejarlo tirado en el suelo.[21] Finalmente, el agente Rodríguez Franco culminó su investigación la cual, en consulta con el fiscal de turno, concluyó que el señor Seda Vila fue el agresor.[22]

<u>María Ortiz González</u>

La señora María Ortiz González (en adelante, señora Ortiz González) declaró que era la esposa de Vicente Cruz Padilla desde hace 35 años y que residía en el Sector Cambalache de Mayagüez desde hace 32 años.[23] Declaró que, el 2 de octubre de 2019, salió a visitar a sus padres desde las 8:30 de la mañana hasta las 2:30 de la tarde cuando regresó a su casa.[24] Al volver a su hogar, se encontró con su esposo, quien tenía hematomas en la cara y en el costado de su cuerpo.[25] Aseveró que el señor Cruz Padilla le comentó a la señora Ortiz González que el apelante fue a la caja de su guagua y de allí sacó un rastrillo industrial que utilizó para agredirlo.[26] Además, el señor Cruz Padilla le manifestó a su esposa que sentía mucho dolor y que acudiría al hospital al día siguiente.[27] Luego de que el señor Cruz Padilla le comentara esto, la señora Ortiz González procedió a tomarle unas fotografías para tenerlas como evidencia.[28]

En su testimonio, la señora Ortiz González narró que, al día siguiente del suceso, el agente Rodríguez Franco se personó en su

---

[20] *Id.*, a la pág. 40, líneas 4-16.
[21] *Id.*
[22] *Id.*, a la pág. 47, líneas 3-8.
[23] *Id.*, a la pág. 96, líneas 16-25; pág. 97, líneas 1-5.
[24] *Id.*, a la pág. 115, líneas 16-23.
[25] *Id.*, a la pág. 116, líneas 1-10.
[26] *Id.*, a la pág. 102, líneas 1-6.
[27] *Id.*, a la pág. 102, líneas 7-14.
[28] *Id.*, a la pág. 102, líneas 15-21. Dichas fotografías fueron presentadas en corte y admitidas como exhibits. Véase, Transcripción de la Prueba Oral, 24 de febrero de 2022, a las págs. 104-114.

residencia para tomarle una declaración al señor Cruz Padilla.[29] Posterior a esto, la señora Ortiz González y el señor Cruz Padilla acudieron Centro Médico para atender las heridas del señor Cruz Padilla.[30] En dicha visita al hospital, no se encontró sangrado en la cabeza ni en el costado.[31] En el redirecto que se le hizo a la señora Ortiz González, esta leyó el *Cuestionario de Accidente* que le realizó el hospital a su esposo.[32] En dicho documento, el señor Cruz Padilla plasmó que el apelante casi lo atropella con su vehículo y que, al desmontarse de este, se dirigió hacia él y lo empujó, por lo cual el señor Cruz Padilla le tuvo que dar con el rastrillo.[33]

Vicente Cruz Padilla

En su testimonio, el señor Cruz Padilla manifestó que tenía 74 años, era retirado y residía en el sector Cambalache del Barrio Limón de Mayagüez junto a su esposa, la señora Ortiz González.[34] En cuanto a los hechos, narró que entre las 9:00 a 9:30 de mañana del 2 de octubre de 2019, se encontraba recogiendo unas hojas frente a su casa.[35] Testificó que estaba utilizando un rastrillo para recoger las hojas y las quemaba.[36] Narró que mientras recogía las hojas, sintió de repente un ruido de un vehículo *pickup* de color azul, por lo que, en reacción, procedió tirarse hacia una barranca que estaba cerca.[37] Detalló que ese ruido provenía de su parte trasera, por lo cual, cuando se volteó percibió que la guagua venía hacia él.[38]

El señor Cruz Padilla narró que al lanzarse a la barranca, se reincorporó y en ese instante se sentía molesto porque el vehículo

---

[29] Transcripción de la Prueba Oral, 24 de febrero de 2022, a la pág. 122, líneas 1-13.
[30] *Id.*, a la pág. 122, líneas 18-25.
[31] *Id.*
[32] *Id.*, a la pág. 139, líneas 21-27.
[33] *Id.*, a la pág. 140, líneas 20-25; pág. 141, líneas 1-6.
[34] Transcripción de la Prueba Oral, 25 de febrero de 2022, a la pág. 9, líneas 15-25; pág. 10, líneas 1-6.
[35] *Id.*, a la pág. 16, líneas 3-19.
[36] *Id.*, a la pág. 17, líneas 20-25.
[37] *Id.*, a la pág. 21, líneas 2-14.
[38] *Id.*, a la pág. 22, líneas 12-23.

casi lo atropellaba.[39] Igualmente, declaró que vio cuando el apelante se desmontó de la guagua y acto seguido, el señor Seda Vila lo empujó con su cuerpo.[40] Explicó que, inmediatamente, el apelante se dirigió a su vehículo a buscar un rastrillo industrial, lo cual provocó que el señor Seda Vila lo tratara de alejar con el rastrillo que tenía en la mano.[41] Sin embargo, a pesar de ello, el apelante agarró el rastrillo que poseía como si fuera un bate y golpeó al señor Cruz Padilla con el mismo hasta que este cayó al suelo y perdió el conocimiento.[42] Resaltó que, el apelante lo golpeó en más de tres (3) ocasiones.[43] Explicó que luego de esto regresó a su casa a pesar del dolor que sentía, hasta que su esposa llegó y se alarmó al encontrarlo en el estado en que estaba.[44] Manifestó que le dolía la cabeza y el costado.[45]

Finalmente, el señor Cruz Padilla testificó que, al día siguiente del incidente, el agente Rodríguez Franco llegó a su casa y se asombró al ver los golpes que este tenía en su rostro.[46]

Santa Pérez Martel

En su testimonio, la señora Pérez Martel declaró que residía en el Barrio Limón de Mayagüez desde hace quince (15) años y conocía al señor Cruz Padilla desde hace más de diez (10) años.[47] Asimismo, atestó que conocía al señor Seda Vila, aunque no tiene una amistad con él.[48] La señora Pérez Martel narró que, el día de los hechos, estaba limpiando un solar cerca de la residencia del señor Cruz Padilla y en ese momento vio a éste recogiendo unas hojas.[49] Narró que, posteriormente, la señora Pérez Martel volvió a su

---

[39] *Id.*, a la pág. 23, líneas 16-24; pág. 24, líneas 1-4.
[40] *Id.*, a la pág. 24, líneas 8-16.
[41] *Id.*, a la pág. 27, líneas 5-19.
[42] *Id.*, a la pág. 27, líneas 20-25; pág. 28, líneas 1-5.
[43] *Id.*, a la pág. 30, líneas 6-16.
[44] *Id.*, a la pág. 33, líneas 7-18.
[45] *Id.*, a la pág. 33, líneas 19-24.
[46] *Id.*, a la pág. 38, líneas 1-7.
[47] Transcripción de la Prueba Oral, 11 de abril de 2022, a la pág. 24, líneas 20-25; pág. 25, líneas 1-20.
[48] *Id.*
[49] *Id.*, a la pág. 29, líneas 10-17.

residencia y luego salió a la carretera y vio que, en medio de una discusión, el señor Seda Vila agredió al señor Cruz Padilla con el rastrillo.[50] Aseguró que, vio inicialmente al señor Cruz Padilla que estaba de pie hasta que el apelante comenzó a golpearlo y el señor Cruz Padilla cayó para atrás, quedando inconsciente.[51] Explicó que, posterior a que el señor Seda Vila se marchara, la señora Pérez Martel se dirigió a donde estaba el señor Cruz Padilla y recogió todas sus pertenencias.[52]

Declaró que, el señor Cruz Padilla le mostró sus heridas y en ese momento identificó un golpe en el ojo y otro en la cabeza.[53] Atestó que a los tres (3) días del incidente habló con el señor Cruz Padilla y este le comentó que había ido del hospital.[54] Finalmente, la señora Pérez Martel reconoció que no salió a la calle a intervenir con el altercado y que tampoco vio cuando el señor Seda Vila se desmontó de su vehículo. Además, recalcó que presenció cuando el apelante agredió al señor Cruz Padilla, aunque no recordó en que partes del cuerpo.[55]

#### María Isabel Vélez Nieves

María Isabel Vélez Nieves (en adelante, señora Vélez Nieves) declaró que trabajaba como ingeniera y residía en el Barrio Limón de Mayagüez junto a su esposo el señor Seda Vila con quien ha estado casada por 31 años.[56] Narró que, mientras se encontraba trabajando, recibió una llamada de su esposo, en la cual le indicó que este se dirigía al cuartel de la policía, ya que tuvo un incidente en el que resultó agredido por el señor Cruz Padilla.[57] Aseveró que, posterior a esto, el apelante la llamó para comunicarle que este iba

---

[50] *Id.*, a la pág. 31, líneas 7-17.
[51] *Id.*, a la pág. 33, líneas 7-16.
[52] *Id.*, a la pág. 37, líneas 14-25; pág. 38, líneas 1-8.
[53] *Id.*, a la pág. 42, líneas 21-25; pág. 43, líneas 1 y 2.
[54] *Id.*, a la pág. 44, líneas 4-10.
[55] *Id.*, a la pág. 64, líneas 9-23.
[56] *Id.*, a la pág. 77, líneas 3-13.
[57] *Id.*, a la pág. 78, líneas 17-25; pág. 79, líneas 1-9.

al hospital.[58] Testificó que al regresar a su casa luego de su turno de trabajo, percibió que el apelante tenía unos hematomas en el área del hombro izquierdo.[59] Explicó que, tras ver estos golpes, decidió tomarle unas fotografías, las cuales fueron admitidas como evidencia en el juicio.[60] La señora Vélez Nieves afirmó que estas fotografías las tomó el 2 de octubre de 2019 a las 7:00 pm.[61]

En el contrainterrogatorio, el Ministerio Público le cuestionó que, en algunas fotografías aparecía el apelante con el pelo largo y en otras con el pelo corto.[62] Sobre esto, la señora Vélez Nieves manifestó que puede ser que no se hayan tomado todas las fotografías el mismo día.[63] Asimismo, aclaró que ella no tenía conocimiento personal del incidente. [64]

<u>Eric Conde Seda Vila</u>

El último en testificar fue el señor Seda Vila. En su testimonio declaró que él era tasador de profesión y que vivía en el Barrio Limón de Mayagüez toda su vida.[65] Narró que, el 2 de octubre de 2019, se disponía a salir a trabajar y sintió un olor a humo, por lo cual caminó al interior de su propiedad y vio al señor Cruz Padilla con un *lighter*.[66] Al ver esto, se montó en su vehículo, una pickup Dodge Ram azul, dio una vuelta y llegó al lugar en donde se encontraba el señor Cruz Padilla.[67] Tan pronto se bajó de la guagua, agarró un rastrillo que tenía en su baúl y se dirigió a apagar el fuego hasta que el señor Cruz Padilla comenzó a increparlo.[68] Manifestó que mientras caminaba hacia el fuego, el señor Cruz Padilla salió por detrás y le dio con un palo en la cabeza.[69] Explicó que luego lo golpeó

---

[58] *Id.*, a la pág. 80, líneas 13-20.
[59] *Id.*, a la pág. 81, líneas 15-20.
[60] *Id.*, a las págs. 82-96.
[61] *Id.*, a la pág. 124, líneas 11-18.
[62] *Id.*, a las págs. 127-132.
[63] *Id.*, a la pág. 132, líneas 1-6.
[64] *Id.*, a la pág. 134, líneas 1-11.
[65] *Id.*, a las págs. 144-146.
[66] *Id.*, a la pág. 147, líneas 1-10.
[67] *Id.*, a la pág. 148, líneas 18-25.
[68] *Id.*, a la pág. 151, líneas 8-17.
[69] *Id.*, a la pág. 152, líneas 18-23.

en la espalda, por el lado izquierdo del cuello y luego en la cintura.[70] Ante tal actuación por parte del señor Cruz Padilla, el apelante indicó que tuvo que empujarlo con su rastrillo, lo cual provocó que el señor Cruz Padilla se enredara con sus chancletas y cayera al suelo.[71]

El señor Seda Vila continuó su testimonio narrando que mientras el señor Cruz Padilla se encontraba en el suelo, logró levantarlo y justo en ese instante, apareció la señora Pérez Martel, quien ayudó a sentar al señor Cruz Padilla.[72] Declaró que recogió sus pertenencias y las colocó en la propiedad del señor Cruz Padilla.[73] También atestó que, posterior a este incidente, a eso de las 10:15 de la mañana, se dirigió al cuartel de la policía donde el agente Rodríguez Franco le tomó su declaración.[74] Del mismo modo, el señor Seda Vila explicó que en múltiples instancias se había querellado con la Policía Municipal de Mayagüez, ya que en varias ocasiones, en el mismo lugar en el que ocurrió el altercado, el apelante había presenciado la quema de basura.[75] Sostuvo que todas estas querellas se investigaron, pero ninguna rindió resultados.[76] Por último, manifestó que actuó en legítima defensa, puesto que temió por su vida luego de recibir un golpe con un palo en la cabeza por parte del señor Cruz Padilla.[77]

Desfilada la prueba y sometido el caso por las partes, el 12 de abril de 2022, el jurado deliberó y emitió su veredicto.[78] En cuanto a la acusación por la infracción del Artículo 5.05 de la Ley de Armas,

---

[70] *Id.*, a la pág. 154, líneas 1-11.
[71] *Id.*, a la pág. 155, líneas 15-20.
[72] *Id.*, a la pág. 157, líneas 5-14.
[73] *Id.*, a la pág. 157, líneas 21-25.
[74] *Id.*, a la pág. 160, líneas 1-6.
[75] *Id.*, a la pág. 169; pág. 181, líneas 1-6.
[76] *Id.*, a la pág. 184, líneas 9-19.
[77] *Id.*, a la pág. 205, líneas 6-13.
[78] Transcripción de la Prueba Oral, 12 de abril de 2022, a las págs. 1-42.

se declaró al apelante No Culpable.[79] No obstante, en cuanto a la infracción del Art. 127-A, se declaró al apelante Culpable.[80]

Así las cosas, el 19 de julio de 2022, el TPI dictó su *Sentencia*. Mediante esta, sentenció al señor Seda Vila a cumplir una pena de diez (10) años de cárcel bajo el régimen de libertad a prueba, así como el pago de una multa de trecientos dólares ($300.00).

Insatisfecho con este dictamen, el 18 de agosto de 2022, el apelante acudió ante esta Curia mediante una *Apelación Criminal* y formuló los siguientes señalamientos de error:

> i. Erró el Honorable Tribunal de Primera Instancia al encontrar convicto al Sr. Eric C. Seda Vila a pesar de que el Ministerio Público no probó los [sic] todos y cada uno de los elementos del delito más allá de duda razonable.

> ii. Erró el Tribunal de Primera Instancia al encontrar convicto al Sr. Eric C. Seda Vila, a pesar de existir duda razonable y haberse establecido la defensa afirmativa de legítima defensa.

> iii. El señor Eric C. Seda Vila y su representación legal no renuncian al derecho de poder plantear errores adicionales ante el Honorable Tribunal de Apelaciones.

El 22 de agosto de 2022, este Tribunal emitió una *Resolución* en la cual le concedió al apelante hasta el 18 de octubre de 2022 para que presentara una transcripción de la prueba oral conforme lo exige nuestro Reglamento.[81] Asimismo, se dispuso que, una vez se presentara la transcripción, la parte apelada tendría entonces un término de diez (10) días para presentar objeciones a la misma. Vencido este término para emitir objeciones, la parte apelada tendría un término de treinta (30) días para presentar su oposición. Finalmente, se le ordenó al TPI elevar los autos originales del presente caso y toda la prueba presentada.

Tras varios trámites procesales, el 17 de noviembre de 2022, el señor Seda Vila presentó una *Moción Informativa y Presentación*

---

[79] *Id.*, a la pág. 36, líneas 1-7.
[80] *Id.*, a la pág. 35, líneas 18-25.
[81] Véase, Regla 76 (B) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 76 (B).

*de Proyecto de Transcripción.* Por su parte, el 30 de noviembre de 2022, el Pueblo de Puerto Rico, por conducto de la Oficina del Procurador General de Puerto Rico (en adelante, apelado o el Pueblo) solicitó un término adicional de veinte (20) días para estipular el proyecto de transcripción. Dicha prórroga fue concedida. Oportunamente, el 22 de diciembre de 2022, el Pueblo presentó una *Moción para Notificar Correcciones a la Transcripción de la Prueba Oral.* En tal sentido, el 13 de enero de 2023, le ordenamos al apelado a incorporar las correcciones a la transcripción de la prueba oral de forma tal que la parte apelada estuviera en posición de estipular. Para ello, se le concedió hasta el 23 de enero de 2023.

En cumplimiento de nuestra orden, el 24 de enero de 2023, el apelante presentó la *Moción Informativa en Cumplimiento de Orden* en la cual informó que se le cursó la transcripción con las correcciones a la parte apelada. Ante esto, el 26 de enero de 2023, el Pueblo presentó su *Moción Notificando Estipulación de Transcripción.* El 27 de marzo de 2023, el señor Seda Vila presentó su *Alegato Suplementario.* En este, formuló y argumentó los siguientes dos (2) señalamientos de error:

> Err[ó] el Tribunal de Primera Instancia al aceptar el veredicto de culpabilidad emitido por el Jurado en contra del Sr. Eric Conde Seda Vila declararlo convicto, a pesar de que el Ministerio Público no probó todos los elementos del delito de Artículo 127 del Código Penal más allá de duda razonable.

> Err[ó] el Tribunal de Primera Instancia al aceptar el veredicto de culpabilidad emitido por el Jurado en contra del Sr. Eric Conde Seda Vila, y declararlo convicto, a pesar de existir duda razonable y haberse establecido el quantum y elementos necesarios para establecer la legítima defensa conforme establecido en el Artículo 25 y 25 A del Código Penal de 2012, según enmendado por la Ley 92-2018.

Por su lado, el 15 de mayo de 2023, el apelado presentó su *Alegato de el [sic] Pueblo.* Con el beneficio de la comparecencia de las partes, los autos originales del caso, y la transcripción de la prueba

oral del juicio en su fondo, procedemos a resolver la controversia ante nuestra consideración.

II.

**A. Apelación Criminal**

El trámite procesal de un recurso de apelación criminal, desde el Tribunal de Primera Instancia, pasando por este Tribunal intermedio, y hasta el Tribunal Supremo, se rige por las reglas 193 a 217 de las Reglas de Procedimiento Criminal, según enmendadas.[82] Asimismo, las Reglas 23 a la 30.1 del Reglamento de nuestro Tribunal,[83] rigen el trámite a seguir desde la presentación del recurso de apelación criminal, hasta su perfeccionamiento. La Regla 23 de nuestro Reglamento dispone que, un escrito de apelación criminal contra una sentencia emitida por el tribunal de instancia tiene que ser presentado ante el Tribunal de Apelaciones dentro del término jurisdiccional de treinta (30) días, computados a partir de la fecha en que se dictó la sentencia.[84] Como es sabido, un plazo jurisdiccional es de carácter fatal. Ello quiere decir que no admite justa causa, es improrrogable, y que su incumplimiento es insubsanable.[85]

En lo pertinente al caso ante nuestra consideración, cuando se señala un error relacionado con la suficiencia de la prueba testifical o con la apreciación errónea de la misma, la Regla 29 de nuestro Reglamento dispone que la parte apelante deberá presentar la porción de la prueba oral presentada ante el Tribunal de Primera Instancia que estime necesaria para resolver el recurso.[86] La parte apelante deberá radicar una moción dentro de los diez (10) siguientes a la radicación del recurso, en la que acredite el método

---

[82] 34 LPRA Ap. II.
[83] 4 LPRA Ap. XXII-B.
[84] *Id.*, R. 23.
[85] *Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000); *Arriaga v. FSE*, 145 DPR 122, 131 (1998); *Loperena Irizarry v. ELA*, 106 DPR 357, 360 (1977).
[86] 4 LPRA Ap. XXII-B, R. 29.

de reproducción de la prueba que ha de utilizar y los motivos por los cuales este es el más apropiado.[87] Con respecto a la reproducción de la prueba oral mediante transcripción, la Regla 29(C) dispone que se hará conforme a la Regla 76 del mismo reglamento.[88] Si se tratase de exposición estipulada o exposición narrativa, se hará conforme a las disposiciones de la Regla 76.1.[89] Cabe destacar que la Regla 76 dispone de un término de treinta (30) días, contados a partir de la entrega de la regrabación, para que la parte apelante presente la transcripción de la prueba oral, salvo que esta Curia disponga otra cosa.[90]

### B. Duda Razonable

La Regla 110 de las Reglas de Procedimiento Criminal[91] establece que, en todo proceso criminal, se presumirá que la persona acusada es inocente hasta que se pruebe lo contrario y, en caso de existir duda razonable acerca de su culpabilidad, se le absolverá.[92] De esta manera, se exige un *quantum* de prueba de más allá de duda razonable para controvertir la presunción de inocencia que le asiste a toda persona acusada, por imperativo constitucional.[93] "La duda razonable que opera en función de nuestro ordenamiento procesal criminal no es una duda especulativa ni inimaginable, ni cualquier duda posible".[94] Al contrario, la duda razonable "es aquella duda fundada que surge como producto del raciocinio de todos los elementos de juicio involucrados en el caso".[95] Dicho de otra manera, la duda razonable existe cuando el juzgador queda insatisfecho con la prueba

---

[87] *Id.*, R. 29(B).
[88] *Id.*, R. 29(C).
[89] *Id.*
[90] 4 LPRA Ap. XXII-B, R. 76.
[91] 34 LPRA Ap. II, R. 110.
[92] *Id.*
[93] *Pueblo v. Santiago*, 176 DPR 133, 142 (2009).
[94] *Pueblo v. Santiago*, supra; *Pueblo v. Irizarry*, 156 DPR 780, 788 (2002).
[95] *Pueblo v. Santiago*, supra; *Pueblo v. Irizarry*, supra; *Pueblo v. Cruz Granados*, 116 DPR 3 (1984).

presentada.[96] Para cumplir con el estándar de prueba de más allá de duda razonable, el Estado viene obligado a probar cada uno de los elementos del delito imputado, su conexión con la persona acusada y la intención o negligencia criminal de esta.[97] Además, debe "producir certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido".[98]

### C. Maltrato a personas de edad avanzada.

Con el propósito de establecer "el deber del Estado de promulgar y adoptar las medidas necesarias para detener y erradicar el maltrato, así como la negligencia hacia las personas de edad avanzada",[99] el 12 de agosto de 2014, se aprobó la Ley 138-2014. Dicho estatuto, enmendó varias disposiciones de la Carta de Derechos de las Personas de Edad Avanzada e incorporó ciertos artículos al Código Penal de Puerto Rico. Entre los aludidos artículos que incorporó está legislación se encuentra el Artículo 127-A del Código Penal, el cual lee como sigue:

> Toda persona que, cometa abuso físico, emocional, financiero, agresión, robo, apropiación ilegal, amenaza, fraude, o violación, contra una persona de edad avanzada, causándole daño o exponiéndole al riesgo de sufrir daño a su salud, su bienestar, o sus bienes, será sancionada con pena de reclusión por un término fijo de diez (10) años.[100]

### D. Legítima Defensa

Nuestro ordenamiento jurídico reconoce varias causas de exclusión de responsabilidad penal, entre las cuales se encuentra la legitima defensa. En lo pertinente, el Código Penal de Puerto Rico, en su Artículo 25 dispone:

> No incurre en responsabilidad penal quien defiende su persona, su morada, sus bienes o derechos, o la persona, morada, bienes o derechos de otros en circunstancias que hicieren creer razonablemente que

---

[96] *Pueblo v. Santiago*, supra; *Pueblo v. Irizarry*, supra.
[97] *Id*. Véase también, *Pueblo v. Acevedo Estrada*, 150 DPR 84, 99 (2000); *Pueblo en interés menor F.S.C.*, 128 DPR 931, 941–942 (1991); *Pueblo v. Rodríguez Román*, 128 DPR 121, 131 (1991).
[98] *Pueblo v. Santiago*, supra, a la pág. 143; *Pueblo v. Irizarry*, supra, a la pág. 787.
[99] *Exposición de Motivos* de la Ley 138-2014.
[100] 33 LPRA sec. 5186a.

se ha de sufrir un daño inminente, siempre que haya necesidad racional del medio empleado para impedir o repeler el daño, falta de provocación del que ejerce la defensa, y que no se inflija más daño que el necesario para repeler o evitar el daño.[101]

En varias instancias, el Tribunal Supremo de Puerto Rico ha reiterado que, en esencia, para que se configure la legítima defensa se deben cumplir con estos requisitos: (i) que la persona tenga una creencia razonable de que se ha de sufrir un daño inminente; (ii) que haya necesidad racional del medio utilizado para impedir o repeler el daño; (iii) que no haya provocación de quien invoca la defensa; (iv) que no se inflija más daño que el necesario para repeler o evitar el daño; y (v) que la persona tenga motivos fundados para creer que al dar muerte al agresor se hallaba en inminente o inmediato peligro de muerte o de grave daño corporal.[102]

Así pues, "las circunstancias que concurran para justificar la defensa propia deben ser suficientes para excitar el temor de una persona razonable".[103] En ese sentido, nuestro más Alto Foro ha reiterado que la creencia razonable a la cual hace alusión la jurisprudencia está relacionada con el criterio de la persona prudente y razonable.[104] Por tal motivo, "se juzga el temor de determinada persona comparándolo con el de una razonable, de ordinaria prudencia, o un buen padre o una buena madre de familia".[105]

La legítima defensa, presupone que la persona que la ejerce actúa para prevenir un daño inminente o repeler un daño o ataque que se está llevando a cabo.[106] La persona debe razonablemente creer que el ataque se va a producir en un futuro inmediato o si ya

---

[101] 33 LPRA sec. 5038.
[102] *Reyes Salcedo v. Policía de P.R.*, 143 DPR 85, 98 (1997); *Pueblo v. González Román I*, 129 DPR 933, 940 (1992). *Pueblo v. Torres Rodríguez*, 119 DPR 730, 748 (1987).
[103] *Reyes Salcedo v. Policía de P.R.,* supra, a la pág. 98 citando *Pueblo v. González Román I*, supra.
[104] *Id.; Pueblo v. Martínez Díaz*, 90 DPR 467, 474 (1964).
[105] *Reyes Salcedo v. Policía de P.R.,* supra
[106] D. Nevárez Muñiz, *Código Penal de Puerto Rico,* San Juan, Instituto para el Desarrollo del Derecho, Inc., 2019, a la pág. 54.

se ha iniciado, creer razonablemente que es necesario intervenir para prevenir un daño más grave.[107]

De igual forma, para que se active la legítima defensa, la persona que la emplea no puede infligir más daño que el necesario para repeler o evitar el daño original que se intenta repeler.[108] No es necesario que la persona que invoque la defensa retroceda hasta colocarse en un estado de indefensión antes de atacar a su agresor.[109] A fin de cuentas, lo importante es que el medio empleado no sea desproporcional con la provocación que se presentó.[110]

### E. Apreciación de la Prueba y Estándar de Revisión Apelativa

La determinación de si la culpabilidad de una persona acusada fue probada más allá de duda razonable, es revisable en apelación, puesto que "la apreciación de la prueba desfilada en un juicio es un asunto combinado de hecho y derecho."[111] Ahora bien, como es sabido, el ejercicio discrecional de la apreciación de la prueba que ejerce el juzgador de los hechos está revestido de confiabilidad y merece respeto y deferencia.[112] Por ello, la valoración que lleva a cabo el foro primario se presume correcta, toda vez que es este quien tiene la oportunidad de ver, escuchar y valorar las declaraciones de los testigos, así como sus lenguajes no verbales.[113]

> […] no sólo habla la voz viva. También hablan las expresiones mímicas: el color de las mejillas, los ojos, el temblor o consistencia de la voz, los movimientos, el vocabulario no habitual del testigo, son otras tantas circunstancias que deben acompañar el conjunto de una declaración testifical y sin embargo, todos estos elementos se pierden en la letra muda de las actas, por lo que se priva al Juez de otras tantas circunstancias que han de valer incluso más que el texto de la declaración misma para el juicio valorativo que ha de

---

[107] *Id.*
[108] *Reyes Salcedo v. Policía de P.R.,* supra, a las págs. 99-100.
[109] *Id.*
[110] D. Nevárez Muñiz, Código Penal de Puerto Rico Comentado por Dora Nevárez Muñiz, San Juan, Instituto para el Desarrollo del Derecho, Inc., 2019, a la pág. 55.
[111] *Pueblo v. Torres Medina*, 2023 TSPR 50; *Pueblo v. Rodríguez Pagán*, 182 DPR 239, 259 (2011); *Pueblo v. Irizarry*, supra, pág. 788.
[112] *Argüello v. Argüello*, 155 DPR 62, 79 (2001) citando a *Pueblo v. Bonilla Romero*, 120 DPR 92, 111 (1987); *Trinidad v. Chade*, 153 DPR 280, 289 (2001).
[113] *Pueblo v. Santiago,* supra, a la pág. 148.

emitir en el momento de fallar; le faltará el instrumento más útil para la investigación de la verdad: la observación.[114]

En consecuencia, al este Tribunal Apelativo enfrentarse a la tarea de revisar las determinaciones del foro de instancia, no debe intervenir con las determinaciones de hechos, con la apreciación de la prueba ni con la adjudicación de credibilidad efectuadas por el mismo, a no ser que haya mediado error manifiesto, pasión, prejuicio o parcialidad.[115]

De igual forma, se podrá intervenir con la determinación del TPI cuando la referida valoración se aparte de la realidad fáctica o resulte inherentemente imposible o increíble.[116] Dicho de otro modo, este Tribunal solo podrá intervenir con la apreciación del juzgador de los hechos si, luego de evaluar minuciosamente la prueba del caso, guardamos serias, razonables y fundadas dudas acerca de la culpabilidad del acusado.[117]

En síntesis, a menos que existan los elementos antes mencionados o que la apreciación de la prueba se aleje de la realidad fáctica o que ésta sea inherentemente imposible o increíble, el tribunal apelativo deberá abstenerse de intervenir con la apreciación de la prueba hecha por el juzgador de los hechos.[118]

III.

En el presente caso, el apelante nos solicita que revoquemos la *Sentencia* emitida por el TPI el 19 de julio de 2022, la cual lo sentenció a cumplir una pena de diez (10) años bajo el régimen de libertad a prueba, luego de que un jurado lo encontrara culpable por

---

[114]*Pueblo v. Toro Martínez*, supra, a la pág. 857 (2018), citando a *Ortiz v. Cruz Pabón*, 103 DPR 939, 947 (1995).
[115] *González Hernández v. González Hernández*, 181 DPR 746, 776 (2011); *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 811 (2009); *Pueblo v. Irizarry*, supra, a la pág. 789; *Pueblo v. Maisonave*, 129 DPR 49, 62-63 (1991).
[116] *Pueblo v. Martínez Landrón*, 202 DPR 409, 424 (2019) citando a *Pueblo v. Maisonave*, supra, a la pág. 63; *Pueblo v. Viruet Camacho*, 173 DPR 563, 584 (2009); *Pueblo v. Irizarry*, supra; *Pueblo v. Acevedo Estrada*, supra.
[117] *Pueblo v. Casillas, Torres*, 190 DPR 398, 415 y 417 (2014).
[118] *Pueblo v. Arlequín Vélez*, 204 DPR 117, 148 (2020); *Pueblo v. Maisonave*, supra.

violación al Art. 127-A del Código Penal de Puerto Rico. En tal sentido, en su primer señalamiento de error, el apelante plantea que el TPI erró al aceptar el veredicto de culpabilidad emitido por el Jurado, toda vez que no se probaron todos los elementos del delito de Artículo 127-A del Código Penal más allá de duda razonable. Además, en su segundo señalamiento de error, el apelante sostiene que el TPI erró al aceptar el veredicto de culpabilidad emitido por el jurado, aun habiéndose establecido los elementos necesarios para activar la legítima defensa conforme lo dispone el Artículo 25 y 25-A del Código Penal.

Por su parte, el Pueblo argumenta que, en este caso, la prueba presentada por el Ministerio Público demostró más allá de duda razonable la comisión del delito por el que se acusó al señor Seda Vila. Asimismo, explicó que, en el presente caso, no se configuró la defensa de exclusión de responsabilidad penal de legítima defensa. Veamos.

En primer lugar, es preciso reiterar que los foros apelativos le otorgamos un alto grado de deferencia a la apreciación de la prueba que realiza el Jurado como juzgador de los hechos, tal y como ocurre en el presente caso. De esta forma, es necesario recalcar que, en ausencia de pasión, perjuicio, parcialidad o error manifiesto, esta Curia no debe intervenir con tal apreciación.

En su primer señalamiento de error, el apelante sostiene que la prueba desfilada en el juicio no probó todos los elementos del delito proveniente del artículo 127-A del Código Penal. La precitada disposición penal dispone que toda persona que, (i) cometa abuso físico, emocional, financiero, agresión, robo, apropiación ilegal, amenaza, fraude, o violación, (ii) contra una persona de edad avanzada, (iii) causándole daño o exponiéndole al riesgo de sufrir daño a su salud, su bienestar, o sus bienes, será sancionada con pena de reclusión por un término fijo de diez (10) años.

Conforme surge de la transcripción de la prueba oral, el Ministerio Público presentó como prueba el testimonio de cuatro (4) testigos. De estos, tanto el agente Rodríguez Franco,[119] como el propio agraviado, señor Padilla Cruz[120] y la señora Pérez Martel[121] coincidieron en que el 2 de octubre de 2022, tras una discusión, el apelante fue a la caja de su vehículo, tomó un rastrillo y **golpeó** al señor Cruz Padilla en varias ocasiones hasta que este cayó al suelo. Esta prueba, en conjunto con otra evidencia admitida en el juicio, como las notas del agente Rodríguez Franco y el Cuestionario de Accidente, completado por el señor Cruz Padilla, es consistente con la versión de que el apelante **agredió** en varias ocasiones al señor Cruz Padilla con un rastrillo.

Asimismo, en el juicio en su fondo, se dejó claro que, al momento del incidente que motiva este pleito, el señor Padilla Cruz tenía más de setenta (70) años de edad, **siendo así una persona de edad avanzada**.[122] Finalmente, del testimonio de los cuatro testigos del Ministerio Público quedó demostrado que el señor Cruz Padilla recibió daño corporal tras el contacto físico que tuvo con el apelante. De igual forma, las fotografías del señor Cruz Padilla, las cuales fueron admitidas en evidencia, ilustraban que este tenía varios hematomas en el cuerpo y su rostro.

Conforme con esta prueba oral, la cual hemos examinado de manera minuciosa, los autos originales y la totalidad del expediente ante nuestra consideración, concluimos que el Ministerio Público probó más allá de duda razonable la culpabilidad del apelante, Eric Conde Seda Vila, de la violación al Artículo 127-A del Código Penal

---

[119] Transcripción de la Prueba Oral, 24 de febrero de 2022, a la pág. 20, líneas 3-19.

[120] Transcripción de la Prueba Oral, 25 de febrero de 2022, a las págs. 26-28.

[121] Transcripción de la Prueba Oral, 11 de abril de 2022, a las págs. 31-36.

[122] Si bien el Código Penal de Puerto Rico no define persona de edad avanzada, la Ley 138-2014, la cual incorpora el Artículo 127-A, hace referencia a la definición del Artículo 2 (p) de la Ley Núm. 121 de 12 de julio de 1986 la cual lee como sigue: "Persona de Edad Avanzada, es la persona de sesenta (60) años o más".

de Puerto Rico. En ese sentido, el primer error señalado por el apelante no se cometió.

En cuanto al segundo señalamiento error planteado por el apelante, este sostiene que en el presente caso se activó la legítima defensa. Aduce que el contacto físico realizado por el señor Seda Vila al señor Cruz Padilla, respondió a que este último le agredió en la cabeza, lo cual hizo que el apelante temiera por su vida y empleara fuerza en contra del señor Cruz Padilla.

Es sabido que una persona puede defenderse físicamente si cree razonablemente que ha de sufrir un daño inminente, siempre y cuando: (i) haya necesidad racional del medio empleado para impedir o repeler el daño, (ii) falta de provocación del que ejerce la defensa, y (iii) que no se inflija más daño que el necesario para repeler o evitar el daño.

Sin embargo, en el presente caso, la única prueba que presentó el señor Seda Vila para demostrar que este se encontraba ante tales circunstancias fue su propio testimonio en corte, la cual fue la única que planteaba que el señor Cruz Padilla lo agredió con tal contundencia que el apelante temió por su vida. Dicho testimonio no le mereció credibilidad al Jurado.

Habiendo realizado un examen de la prueba oral, no encontramos que en la apreciación de la prueba por parte del Jurado haya estado presente los elementos de pasión, perjuicio, parcialidad o error manifiesto. De tal modo, al no poder demostrar que el señor Seda Vila se encontraba ante una creencia razonable de sufrir un daño inminente que justificara el empleo de fuerza para repelerla, colegimos que no se logró demostrar una razón que activara la legitima defensa. Por tal motivo, concluimos que el segundo error formulado por el señor Seda Vila no se cometió.

En síntesis, ante la ausencia de los elementos de pasión, perjuicio, parcialidad o error manifiesto, de que la apreciación de la

prueba se aleje de la realidad fáctica o que ésta sea inherentemente imposible o increíble, no encontramos razón para intervenir con la apreciación de la prueba hecha por el juzgador de los hechos. Por ello, concluimos que el foro primario no incidió en acoger el veredicto de culpabilidad emitido por el Jurado, por lo cual corresponde confirmar la *Sentencia* apelada.

IV.

Por los fundamentos antes expuestos, se *confirma* la sentencia apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones